IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GLEN K. DOTY, | * |
| Plaintiff, | * |
| v. | * Civil Case No.: SAG-25-672 |
| COMPTROLLER OF MARYLAND, | * |
| Defendant. | * |

* * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Glen K. Doty ("Plaintiff") brings this action against his former employer, the Comptroller of Maryland ("Defendant"), alleging sex discrimination and retaliation in violation of Title VII. ECF 16. Defendant has filed a motion to dismiss, ECF 18, which Plaintiff opposed, ECF 19. Defendant then filed a reply. ECF 20. Plaintiff thereafter filed a motion for leave to file a sur-reply, ECF 21, which Defendant opposed, ECF 22. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Because this Court finds that Plaintiff's sur-reply does not respond to matters raised for the first time in Defendant's reply, Plaintiff's motion for leave to file the sur-reply will be denied. For the reasons explained below, Defendant's motion will be granted in part and denied in part.

I. BACKGROUND

The following facts are derived from the Amended Complaint, ECF 16, and are assumed to be true for purposes of this motion. Plaintiff previously worked for Defendant in its Office of Human Resources ("HR"). *Id.* at ¶ 10. Several years into Plaintiff's employment, Kara Blouin, the Deputy HR Director, informed Plaintiff that he would no longer have access to the timekeeping function on Workday, which he had previously used to perform his duties. *Id.* at ¶¶ 19, 22. In

response to inefficiencies Plaintiff experienced in performing his duties without access to the timekeeping function, Plaintiff went to the office of the Director of Human Resources, Steven Barzal, to discuss the issue. Ms. Blouin later also entered the office to join the discussion. *Id.* at ¶¶ 10, 29–31. During this meeting, both Plaintiff and Ms. Blouin raised their voices. *Id.* at ¶ 31.

As a result of this meeting, Mr. Barzal instituted termination proceedings against Plaintiff. *Id.* at ¶ 53. Mr. Barzal told Plaintiff that other HR employees had responded negatively to Plaintiff's behavior because Plaintiff was the only other male employee in the HR Office. *Id.* at ¶ 50. Mr. Barzal explained that incidents involving similar conduct by other employees who were not terminated were "different" because those employees were female. *Id.* at ¶¶ 61–67. Plaintiff thereafter filed an internal complaint with the Comptroller's Office of Equal Employment Opportunity, alleging, as pertinent here, sex discrimination. *Id.* at ¶ 113. Ms. Blouin terminated Plaintiff "with prejudice" the next day. *Id.* at ¶ 115.

The following procedural facts are taken from the exhibits filed with Defendant's first motion to dismiss, ECF 9, and Plaintiff's first response brief, ECF 14 and 15, and appear to be undisputed. Following Plaintiff's termination, he appealed the decision within the Office of the Comptroller, which reduced his termination from "with prejudice" to "without prejudice." ECF 9-3 at 2. Plaintiff then appealed to the Maryland Office of Administrative Hearings ("OAH"), arguing, as pertinent here, that his termination constituted unlawful sex discrimination. *Id.* In discovery during the OAH proceedings, Plaintiff sought comparator evidence regarding disciplinary actions Defendant took against other employees, including two specific non-termination actions and any terminations in the two years preceding Plaintiff's termination. ECF 14-3 at 4. Defendant filed a motion to bar such discovery, and the administrative law judge ("ALJ") denied that motion as to the information regarding the non-termination actions but granted it as to

the information regarding terminated employees. *Id.* at 4, 16, 21. In so ruling, the ALJ concluded that comparator evidence must provide a basis for direct comparison, and because Plaintiff was terminated, only evidence regarding employees who were not terminated could show disparate treatment. *Id.* at 21.

The case then proceeded to a merits hearing, during which both parties offered exhibits and presented witness testimony. ECF 9-3 at 4–6. Following the hearing, the ALJ issued a written opinion, concluding, in pertinent part, that Defendant had "proved a legitimate, non-gender-discriminatory basis for terminating [Plaintiff]" and that Plaintiff's termination was not "gender-based." *Id.* at 40.

Plaintiff then sought judicial review of the ALJ's decision in the Circuit Court for Prince George's County. ECF 9-4 at 1. That court affirmed, concluding, as pertinent here, that the ALJ had not erred in rejecting Plaintiff's discrimination claim. *Id.* at 13–15. Plaintiff next appealed to the Appellate Court of Maryland. *See Doty v. Off. of the Comptroller of Md.*, No. 0953, 2022 WL 3042192 (Md. App. Ct. Aug. 2, 2022). That court also affirmed and concluded that the ALJ had not erred in determining that sex discrimination had not caused Plaintiff's termination. *Id.* at *18.

While the state proceeding was pending, Plaintiff also filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant had engaged in both sex-based discrimination and retaliation in violation of Title VII of the Civil Rights Act and disability-based discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"). ECF 15-12. When filing the charge, Plaintiff's counsel informed the EEOC that their firm represented Plaintiff and provided their contact information, ECF 15-15, also listing Plaintiff's email address as gkdoty@gmail.com, ECF 15-14.

Following its review of Plaintiff's allegations and an attempted conciliation between the parties, on September 9, 2024, the Department of Justice ("DOJ") emailed a right-to-sue letter regarding the ADA claims ("the ADA letter") to gkdoty@gmail.com, ECF 9-7 and 9-8. As of March 20, 2025, Plaintiff's primary email inbox showed that he had received the ADA letter on September 9, 2024. ECF 15-9. On September 12, 2024, the DOJ emailed a separate right-to-sue letter regarding the Title VII claims ("the Title VII letter") to gkdoty@gmail.com, ECF 9-5 and 9-6. As of March 20, 2025, Plaintiff's primary email inbox did not show receipt of the Title VII letter. ECF 15-9. The DOJ did not email either letter to Plaintiff's counsel but did email them to a representative of the Comptroller's Office of Equal Employment Opportunity, Dr. Elaine McNeil. ECF 9-7 and 9-5. On September 13, 2024, Plaintiff received a reply to the email from Dr. McNeil, acknowledging her receipt of the Title VII letter. ECF 15-8.

Plaintiff's counsel became aware of the right-to-sue letters through a Freedom of Information Act request on December 16, 2024. ECF 15-10 at 4. Plaintiff filed his first complaint on December 20, 2024. ECF 3. Count One is a claim for sex discrimination and Count Two is a claim for Title VII retaliation. Plaintiff is no longer pursuing his ADA-related claims in this Court.

## II. LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts]

in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004).

### III. DISCUSSION

#### A. Issue Preclusion

Defendant first argues that issue preclusion bars Plaintiff from relitigating his sex discrimination claim in this lawsuit. Federal courts must afford the same full faith and credit to state court judgments as would apply in the state's own courts. 28 U.S.C. § 1738. A federal court hearing a Title VII action therefore must give preclusive effect to the judgment of a state court if preclusion would apply to that judgment in the state's own courts. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 463, 485 (1982). In the Title VII context, this rule extends to a state court judgment reviewing an administrative action. *See Rao v. County of Fairfax, Virginia*, 108 F.3d 42, 45 (4th Cir. 1997).

Pursuant to § 1738, a federal court must employ the preclusion rules of the state in whose courts the prior judgment was entered. *Kremer*, 456 U.S. at 481–82. In Maryland, when issue preclusion applies, the determination in a prior judgment of an issue of fact or law is conclusively established for the purposes of a subsequent action between the parties. *Garrity v. Md. State Bd. of Plumbing*, 447 Md. 359, 368 (2016). Maryland courts give preclusive effect to an issue decided in a prior adjudication when (1) the issue is identical to the one presented in the instant action, (2) the prior adjudication involved a final judgment on the merits, (3) the party against whom preclusion is asserted was a party or in privity with a party to the prior adjudication, and (4) the party against whom preclusion is asserted had a fair opportunity to be heard on the issue. *Id.* at 369.[1] The parties do not dispute that the state proceeding here involved a final adjudication on the merits and that Plaintiff was a party to that proceeding. The parties disagree, however, about two elements: whether the state proceeding and this one present the same issue and whether Plaintiff had a fair opportunity to be heard on this issue in the state proceeding.

First, the issue presented in Count One of Plaintiff's Complaint is identical to one of the issues decided in the state proceeding: whether Defendant discriminated against Plaintiff based on sex. ECF 16 at ¶ 126. In the state proceeding, the ALJ concluded that Defendant had "proved a

---

[1] Plaintiff contends that *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322 (4th Cir. 2004) supplies the correct issue preclusion standard. Under that standard, issue preclusion applies when (1) the issue is identical to the one previously litigated, (2) the issue was actually resolved in the prior proceeding, (3) the issue was necessary to the judgment in the prior proceeding, (4) the judgment in the prior proceeding was final and valid, and (5) the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Microsoft*, 355 F.3d at 326. Because § 1738 requires that this Court give the Maryland state court judgment here the same preclusive effect that it would enjoy in Maryland state courts, Maryland law provides the correct standard. Both standards include the two requirements about which the parties disagree, however, and this Court would reach the same conclusion under either standard.

legitimate, non-gender-discriminatory basis for terminating [Plaintiff]" and that Plaintiff's termination was not "gender-based," ECF 9-3 at 40. Both courts that reviewed the ALJ's decision reached the same conclusion. *See* ECF 9-4 at 13–15; *Doty*, 2022 WL 3042192, at *18. Plaintiff himself asked the ALJ to address this issue, as one of his proposed conclusions of law asserted that the disciplinary action imposed on him was "based on his gender rather than severity of his conduct, in violation of Title VII." ECF 15-2 at 17. The issue raised in Count One thus does not differ from the sex discrimination issue that was decided in the state proceeding.

Second, Plaintiff had a fair opportunity to be heard on this issue in the state proceeding. A state may not grant preclusive effect to a constitutionally infirm judgment, so a state proceeding must provide, but need provide no more than, the minimum procedural requirements of the Due Process Clause of the Fourteenth Amendment. *See Kremer*, 456 U.S. at 481–82. The Due Process Clause demands no single model of procedural fairness or particular form of procedure. *Id.* at 483. Rather, the proper inquiry concerns whether the procedures used in the prior proceeding were "fundamentally poor, cursory, or unfair." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 158 (2015). In *Kremer*, the employee in the prior state proceeding had the rights to present evidence, rebut the employer's evidence, have the assistance of counsel, issue subpoenas, and partake in a public hearing and judicial review. *Kremer*, 456 U.S. at 483–84. The Supreme Court concluded that those procedures satisfied the Due Process Clause. *Id.* at 484. Plaintiff enjoyed all of those same procedures in the state proceeding at issue here. *See* Md. Code Regs. § 28.02.01.05(B)(2)–(3) (requiring notice of the rights to present witnesses and documents, to cross-examine witnesses, and to request subpoenas in OAH proceedings); Md. Code Regs. § 28.02.01.08(A)(2) (authorizing representation by counsel in OAH proceedings); Md. Code Regs.

7

§ 28.02.01.19 (generally requiring OAH proceedings to be open to the public); Md. Code, State Government, § 10-222(a)(1) (providing for judicial review of agency decisions).

Plaintiff's arguments that he lacked the rights to conduct depositions or access all of the comparator evidence that he had sought in discovery are unavailing. Notwithstanding these limitations, Plaintiff still had access to discovery in the form of document requests and received in discovery those documents that the ALJ concluded constituted valid comparator evidence. As noted, the Due Process Clause dictates no particular procedure, and it does not categorically require a particular form of discovery or discovery of all materials sought. These limitations did not impair Plaintiff's fair opportunity to be heard in the state proceeding, nor did they render the procedures in the state proceeding "fundamentally poor, cursory, or unfair."

Plaintiff's remaining arguments are similarly unavailing. First, Plaintiff argues that this Court should not give preclusive effect to the state proceeding because the ALJ applied an incorrect standard when analyzing the sex discrimination issue. Alleged errors in a prior proceeding do not bar preclusion, however, because "issue preclusion prevents relitigation of wrong decisions just as much as right ones." *B & B Hardware*, 575 U.S. at 157 (quoting *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 716 F.3d 1020, 1029 (8th Cir. 2013) (Colloton, J., dissenting)). Second, Plaintiff cites *Bethesda Ford, Inc. v. Ford Motor Co.*, 572 F. Supp. 623 (D. Md. 1983) to contend that issue preclusion should not apply because Defendant bore the burden of proof in the state proceeding, whereas Plaintiff has the burden of proof in this action. In *Bethesda Ford*, the court determined that issue preclusion does not apply to a prior proceeding if the party against whom preclusion is sought "had a significantly heavier burden of persuasion with respect to the issue" in the prior proceeding than in the later proceeding. *Bethesda Ford*, 572 F. Supp. at 632. Here, Plaintiff has a heavier burden in the *later* proceeding, so *Bethesda Ford* is inapposite.

8

Because Plaintiff had a fair opportunity to be heard on whether his termination constituted unlawful sex discrimination and that issue was decided adversely to him in the state proceeding, issue preclusion bars Plaintiff from relitigating his sex discrimination claim in this case. Count One is therefore subject to dismissal.

### B. Timeliness

Defendant next asserts that Plaintiff's claims must be dismissed because he failed to timely file them. Once the EEOC has reviewed a charge of employment discrimination, an individual has ninety days upon notification from the EEOC to file suit based on the charge. 42 U.S.C. § 2000e-5(f)(1). This filing period begins to run when the letter is delivered to the plaintiff, rather than when the plaintiff actually receives it, subject to the potential for equitable tolling. *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 653–54 (4th Cir. 1987). Delivery of notice that the letter is available will also trigger the filing period. *See Watts-Means v. Prince George's Fam. Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993) (concluding that delivery of notice from the Postal Service that a right-to-sue letter was ready for pickup triggered the filing period). In the context of an emailed right-to-sue letter, the period begins to run when the letter arrives in the plaintiff's inbox. *Jacobs v. Walmart Inc.*, 22-CV-2666, 2023 WL 4532822, *6 (D. Md. July 13, 2023). Diversion to a spam folder does not alter the date of delivery. *See Boyd v. Monroe City Hall*, 3:20-CV-01473, 2021 WL 1305385, *3–4 (W.D. La. Mar. 8, 2021) (concluding that a plaintiff received his right-to-sue letter on the date that it was sent to his email even though it was diverted to a spam folder).

Although this Court must draw all reasonable inferences in favor of Plaintiff at this stage, the only reasonable inference is that Plaintiff's 90-day filing period began on September 12 or 13, 2024. The DOJ sent the Title VII letter to Plaintiff's provided email address on September 12, 2024, and Plaintiff acknowledges that he received on September 9 the ADA letter that was sent to

9

that same email address. Pursuant to *Boyd*, even if the Title VII letter had been diverted to a temporary spam folder, it would not change the fact that it was delivered to his email address on September 12. Furthermore, even if the Title VII letter had not been delivered to Plaintiff's email address, Plaintiff acknowledges that he received on September 13 the reply from Dr. McNeil to the email from the DOJ issuing that same letter. Like the notice from the Postal Service that the right-to-sue letter was ready for pickup in *Watts-Means*, Dr. McNeil's reply would have alerted Plaintiff that the DOJ had issued the letter and triggered the filing period. Thus, this Court finds that the letter was delivered for the purpose of commencing the 90-day period on September 13 at the latest.

Notwithstanding that the Title VII letter was delivered to Plaintiff more than ninety days before he commenced this action, he is entitled to equitable tolling because the DOJ failed to send the letter to his counsel. The circumstances here closely resemble those in *Coleman v. Talbot Cnty. Det. Ctr.*, 242 Fed. App'x 72 (4th Cir. 2007). There, the plaintiff failed to alert the EEOC of her change of address, and the EEOC mailed her right-to-sue letter to her prior address but did not send it to her attorney. *Coleman*, 242 Fed. App'x at 73. The Fourth Circuit concluded that the plaintiff was entitled to equitable tolling although she failed to file suit within ninety days of receipt of the letter at her old address. *Id.* at 74. The court noted that it did not excuse the plaintiff's failure to notify the EEOC of her change of address but determined that "it is not at all unreasonable for a layperson who has retained counsel to assume that all further matters will be handled by her attorney." *Id.*

This Court similarly does not excuse Plaintiff's failure to monitor his email. But like the plaintiff in *Coleman*, Plaintiff had retained counsel, and it was not unreasonable for him to assume that counsel would handle further matters, including correspondence with the EEOC and the DOJ.

Although Defendant correctly notes that counsel in *Coleman* explicitly requested that the EEOC forward all correspondence to him, *see id.* at 73, and there does not appear to have been any similar explicit request by Plaintiff's counsel here, the Fourth Circuit did not rely on that fact in its analysis. Instead, it focused on the plaintiff and the reasonableness of her assumption, as a layperson who had retained counsel, that her counsel would handle further legal matters. *Id.* at 74. The same assumption by Plaintiff was equally reasonable. Because Plaintiff is entitled to equitable tolling, his failure to file this action within ninety days of delivery of the right-to-sue letter will not bar Count Two.

## IV.  CONCLUSION

For the reasons stated above, this Court will grant Defendant's motion to dismiss as to Count One but deny the motion as to Count Two. A separate Order follows.

Dated: August 27, 2025                             /s/
                                        Stephanie A. Gallagher
                                        United States District Judge